**Ward v. Herr Foods, Inc.**
*[Cite as 6 AOA 104]*

*Case No. 456*
*Vinton County, (4th)*
*Decided August 16, 1990*

*Michael L. Maxfield, Ater & Hadden, Columbus, Ohio, for Appellant and Cross-Appellee.*

*Joseph A. Oths, Oths & Heiser, Wellston, Ohio, for Appellees and Cross-Appellants.*

STEPHENSON, J.

This is an appeal from two orders entered by the Vinton County Court of Common Pleas. The first denied a motion filed by Oscar W. Ward, Jr., and *Mary v. Ward*, plaintiffs below and appellees and cross-appellants herein (hereinafter referred to as "appellees"), seeking prejudgment interest on a jury verdict awarding appellees close to $450,000.00 in damages. The second judgment was entered journalizing the jury verdict. Herr Foods, Incorporated, defendant below and appellant and cross-appellee herein (hereinafter referred to as "appellant") assigns the following errors:

"ASSIGNMENT OF ERROR NO. 1
"THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY OVERRULING THE DEFENDANT'S PRETRIAL MOTION *IN LIMINE* TO PRECLUDE THE PLAINTIFFS FROM REFERRING TO THE PLAINTIFFS' CLAIMS OF PERMANENT INJURIES AND FUTURE DAMAGES AND TO PRECLUDE PLAINTIFFS FROM PRESENTING ANY EVIDENCE ON THESE ISSUES.

"ASSIGNMENT OF ERROR NO. 2
"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY OVERRULING DEFENDANT'S MOTION AND REFUSING TO DIRECT A VERDICT IN FAVOR OF THE DEFENDANT ON PLAINTIFFS' CLAIMS OF PERMANENT INJURY AND FUTURE DAMAGES.

"ASSIGNMENT OF ERROR NO. 3
"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT INSTRUCTED THE JURY THAT IT COULD CONSIDER PERMANENCY AND DAMAGES FOR FUTURE MEDICAL EXPENSES, FUTURE PAIN AND SUFFERING, FUTURE LOSS OF EARNINGS AND FUTURE LOSS OF CONSORTIUM.

"ASSIGNMENT OF ERROR NO. 4
"THE JUDGMENT UPON THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"ASSIGNMENT OF ERROR NO. 5
"THE TRIAL COURT ABUSED ITS DISCRETION BY PROHIBITING THE DEFENDANT FROM CROSS-EXAMINING DR. ROBERT WILLIAMS ABOUT MATTERS RELATING DIRECTLY TO HIS CREDIBILITY AND CHARACTER FOR TRUTHFULNESS OR UNTRUTHFULNESS, SPECIFICALLY HIS PRIOR FALSE TESTIMONY UNDER OATH, AND HIS PRIOR CRIMINAL CONVICTIONS.

"ASSIGNMENT OF ERROR NO. 6
"THE TRIAL COURT ABUSED ITS DISCRETION BY NOT STRIKING THE ENTIRE DEPOSITION TESTIMONY OF DR. ROBERT WILLIAMS AFTER DR. WILLIAMS REFUSED TO ANSWER QUESTIONS ABOUT MATTERS RELATING DIRECTLY TO HIS CREDIBILITY AND CHARACTER FOR TRUTHFULNESS OR UNTRUTHFULNESS THEREBY DENYING THE DEFENDANT ITS RIGHT TO FULLY CROSS-EXAMINE DR. WILLIAMS.

"ASSIGNMENT OF ERROR NO. 7
"THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE DEFENDANT BY REFUSING TO GRANT THE DEFENDANT'S MOTION FOR A CONTINUANCE OF THE TRIAL DATE.

"ASSIGNMENT OF ERROR NO. 8
"THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE DEFENDANT BY REFUSING TO EXTEND THE DISCOVERY CUT-OFF DATE.

"ASSIGNMENT OF ERROR NO. 9
THE TRIAL COURT ABUSED IT'S DISCRETION TO THE PREJUDICE OF THE DEFENDANT BY REFUSING TO ORDER THE PLAINTIFFS TO SUBMIT TO A MEDICAL EXAMINATION TO BE PERFORMED BY A DOCTOR OF THE DEFENDANT'S CHOOSING."

Appellees cross-appeal and assign the following errors:

"ASSIGNMENT OF ERROR NO. 1
"THE TRIAL COURT, UNDER THE STATE OF THE RECORD, ABUSED ITS DISCRETION IN OVERRULING PLAINTIFFS' MOTION FOR PRE-JUDGMENT INTEREST.

"ASSIGNMENT OF ERROR NO. 2
"THE TRIAL COURT ERRED IN DENYING PLAINTIFFS ACCESS TO PORTIONS OF THE LIABILITY INSURER'S FILE IN DISCOVERY PROCEEDINGS SURROUNDING THE MOTION FOR PRE-JUDGMENT INTEREST."

On July 11, appellees were driving in an automobile on U.S. Route 50 in Vinton County when, headed in the opposite direction, a panel van owned by appellant and operated by one Keith A. Hurley, an employee of appellant, went left of center on the highway and collided with appellees' vehicle. Appellees were taken to a hospital in Ross County and subsequently were transferred to Saint Anthony Medical Center in Columbus, Ohio. Mr. Ward was admitted to the hospital but Mrs. Ward was not.

Appellant's insurance company began investigating the claim and made some tentative offers to make advance payments which would be offset from any final settlement. However, negotiations broke down, and appellees filed a complaint in the Vinton County Common Pleas Court on October 16, 1987 wherein they sought monetary compensation for both past and future damages arising out of the July 11, 1986 accident. Appellant answered on November 16, 1987 denying liability and asserting, alternatively, comparative negligence.

The court filed an entry on February 3, 1988 ordering discovery to be completed by August 5, 1988 and set trial for September 19, 1988. On September 1, 1988, appellant filed a motion requesting that appellees be ordered to submit to physical examinations. Appellant asserted that at a pretrial conference held on August 26, 1988, counsel for appellees allegedly agreed to submission to medical examinations of appellees, but when appellant scheduled the examinations, appellees refused to submit to them. Appellant also sought a continuance. In an entry filed September 6, 1988, the court below denied appellant's requests.

Before trial appellant made a motion *in limine* which, *inter alia,* sought to exclude evidence concerning the permanency of appellees' injuries and future damages based upon appellees' injuries. The court below ultimately denied appellant's motion. At the end of appellees' case in chief appellant moved for a directed verdict and at the close of the trial, appellant objected to jury instructions on future damages. Both the motions and the objections were based upon appellant's contention that no future damages had been proven. The court denied the motion for a directed verdict and overruled the objections to the jury instructions.

Following appellants deliberations, the jury returned a general verdict in favor of appellee Oscar Ward in the amount of $303,948.57 and a general verdict in favor of appellee Mary Ward in the amount of $138,992.32. In addition to the general verdicts, the jury answered several interrogatories identifying the appellee and specific damages. The results of those answers are as follows:

(1) for past medical expenses of Oscar Ward, $23,448.57;

(2) for past loss of earnings of Oscar Ward, $28,000;

(3) for past pain and suffering by Oscar Ward, $50,000;

(4) for past loss of consortium of Oscar Ward, $30,000;

(5) for future medical expenses of Oscar Ward, $20,000;

(6) for future loss of earnings of Oscar Ward, $80,000;

(7) for future pain and suffering by and disability of Oscar Ward, $42,500;

(8) for future loss of consortium of Oscar Ward, $30,000;

(9) for past loss of earnings of Mary Ward, $4,650;

(10) for past medical expenses of Mary Ward, $4,342.32;

(11) for past pain and suffering of Mary Ward, $20,000;

(12) for past loss of consortium of Mary Ward, $50,000;

(13) for future medical expenses of Mary Ward, $0.00;

(14) for future pain and suffering by and disability of Mary Ward, $10,000;

(15) for future loss of consortium of Mary Ward, $50,000.

Following the jury trial, appellees sought prejudgment interest pursuant to R.C. 1343.01 through a motion filed on September 27, 1988. In connection with that, appellees attempted to subpoena certain records of claims adjusters of appellant's insurer. Appellant attempted to quash the subpoena claiming the records were privileged. After a hearing on November 3, 1988, wherein the court below made an *in camera* inspection of the records, the court determined that seven documents were discoverable. Appellant immediately appealed to this court. In an entry dated January 19, 1989, this court held

that the lower court's entry releasing the seven documents was not a final appealable order and dismissed the appeal. The court below later released all documents in the file except those which it found to be work product and privileged. The documents not released were sealed and made an part of the appellate record.

The prejudgment interest proceedings continued, and on March 31, 1989, the court below by entry denied appellees' motion for prejudgment interest. On April 7, 1987, appellees filed a motion for findings of fact and conclusions of law. The court ordered both parties to submit proposed findings of fact and conclusions of law, however, neither party complied' with the order. On April 10, 1989, the court filed a judgment entry on the verdict of the jury.

We will address appellant's assignments of error first. In its first assignment of error, appellant essentially asserts that the medical experts called by appellees did not provide evidence from which a jury could award future damages. Appellant specifically contends that the following future damages awarded by the jury were not supported by the evidence:

(1) permanency of Oscar Ward's injuries;

(2) future pain and suffering of both Oscar and Mary Ward;

(3) future medical expenses of Oscar Ward;

(4) future loss of earnings of Oscar Ward; and

(5) future loss of consortium by both Oscar and Mary Ward.

In a case often cited, this court in *Powell v. Montgomery* (1971), 27 Ohio App. 2d 112 held that before future damages may be awarded, it must be proven that those damages are reasonably certain to occur. See also *Cooper v. Sisters of Charity* (1971), 27 Ohio St. 2d 242. Further, in *Darnell v. Eastman* (1971), 23 Ohio St. 2d 13, the Ohio Supreme Court stated the following in the syllabus:

"Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion. In the absence of such medical opinion, it is error to refuse to withdraw that issue from the consideration of the jury."

The injuries suffered by appellees in the case at bar were not objective injuries; therefore, expert medical testimony was required. Accordingly, before appellees could recover for future damages, they were required to present expert medical testimony from which the jury could find the future damages were reasonably certain to occur.

Appellant first contends that the form of the questions which appellees' medical experts were asked were improper. Instead of asking if there was a *reasonable certainty* that future damages would occur, appellees' attorney used the term "reasonable probability." Appellant concludes, therefore, that appellees did not meet their burden of proof. Because all of the medical expert testimony was presented via videotape, appellant before trial moved for an *in limine* order to prevent any evidence on future damages presented because of the failure to ask the proper questions.

We conclude that the form of the questions was not improper and, therefore, hold that the court did not err in overruling the motion *in limine*. We first note that the trial court has broad discretion in the admission on exclusion of evidence; therefore, we will not reverse unless there was an abuse of discretion. *State v. Hymore* (1967), 9 Ohio St. 2d 122; *O'Brien v. Angley* (1980), 63 Ohio St. 2d 159. An abuse of discretion connotes more than error in law or judgment. Before we can hold that a lower court abused its discretion, we must find that its ruling was arbitrary, unreasonable or unconscionable. *Sandusky Properties v. Aveni* (1984), 15 Ohio St. 3d 273.

While the standard as set forth in *Powell, supra* is "reasonable certainty," there have been some courts which have held that asking questions in terms of reasonable probability is sufficient to get the issue to the jury. In *Zebrak v. Cleveland* (March 10, 1983), Cuyahoga County Appellate No. 44989, unreported, the court stated that "[t]he future effect of an injury cannot ordinarily be known with certainty; thus, *it is sufficient if the evidence establishes such effect with reasonable probability* or reasonable certainty." (Emphasis added.) Likewise, in *Roberts v. Mutual Mfg. and Supply Co.* (1984), 16 Ohio App. 3d 324, the Court of Appeals for Hamilton County held that the following constituted competent credible evidence on the issue of future damages:

"Hughes testified that in his opinion, 'the treatment which [he gave plaintiff] *** over the past three years is causally related to the accident.' Furthermore, he testified that in his opinion, 'based upon the experience that she has undergone over the past three years since the

accident, \*\*\* she in all likelihood will continue to have difficulties for some period in the future, but I don't know how long that may be' Expounding on those difficulties, he stated '[t]hat she will probably experience back pain with activity, particularly strenuous activity, for some period in the future.' Plaintiff's prognosis, he testified, in his opinion, 'would be for some continued pain in the future.' When questioned as to his opinion as to the diagnosis of plaintiff's condition 'which resulted from [the] \*\*\* collision,' Hughes testified that his diagnosis was chronic lumbar strain. He further testified that in his opinion, the diagnosed condition was caused by the accident in question, and nothing else."

Hence, the *Roberts* court implicitly held that it is not necessary to use the magic words "reasonable certainty" in the testimony. We also note that in *Great A&P Tea Co. v. Hughes* (1935), 53 Ohio App. 255, the Court of Appeals for Mahoning County stated, citing 1 Sedgwick on Damages (8th Ed.) 249, Section 172, "that the term 'reasonable certainty' does not mean absolute certainty, but reasonable probability and that the use of the phrase 'reasonable probability' in the charge complained of was the equivalent to 'reasonable certainty' and therefore not erroneous."

We need not decide the effect of the use of the phrase "reasonable probability" in a jury instruction since the jury herein was instructed to reach a verdict based upon reasonable certainty. We do, however, hold that it is not necessary when asking questions of medical experts to use the magical language "reasonable certainty." What is necessary is that more than mere possibility or speculation is proven. We conclude that the use of the term "reasonable probability" does satisfy that requirement. Therefore the court below did not err in overruling appellant's motion *in limine.* Accordingly, appellant's first assignment of error is overruled.

We will consider appellant's second, third, and fourth assignments of error jointly. Essentially, appellant argues that there was no evidence to support the jury verdict, i.e., the verdict was against the manifest weight of the evidence. This argument is also made in appellant's argument with respect to the first assignment of error; however, we believe that this argument is better suited for analysis here. Since we have already determined that the motion *in limine* was properly overruled and that appellees' expert medical witnesses could testify, we will limit our analysis of these three assignments of error to

whether there was any evidence to support the jury's verdict.

To determine that a judgment is against the manifest weight of the evidence, an appellate court must determine that there was no competent credible evidence to support that judgment. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St. 3d 77; *C.E. Morris v. Foley Const. Co.* (1978), 54 Ohio St. 2d 279. As noted with respect to appellant's first assignment of error, appellant basically contends that the following damages were not supported by the evidence:

(1) permanency of Oscar Ward's injuries,

(2) future pain and suffering of both Oscar and Mary Ward,

(3) future medical expenses of Oscar Ward,

(4) future loss of earnings of Oscar Ward, and

(5) future loss of consortium of both Oscar and Mary Ward. We will address each of the categories of future damages separately.

With respect to the permanency of the injuries suffered by Oscar Ward, the evidence adduced at trial discloses, that, along with various contusions and bruises, he suffered, four fractured ribs, a punctured and collapsed lung, an injury to his arm, and concussion syndrome involving skull fractures. The major injury which appellees claim is permanent involves the concussion syndrome evidenced by memory loss and slowing of the mental process. Oscar Ward also asserts that he had continued pain in his chest and back.

To recover for permanent injuries, a plaintiff must first show that the injuries claimed to be permanent were caused by the defendant. Then the plaintiff must prove by way of expert medical testimony that, to a degree of reasonable certainty, that the injuries are indeed permanent. *See e.g. Powell, supra.* Also, as determined in our analysis of appellant's first assignment of error, questions using the phrase "reasonable probability" are sufficient. In the case *sub judice,* Dr. Schwarzell, one of appellees' medical experts, testified as follows concerning whether or not Oscar Ward's injuries were caused by the accident:

"Q. Doctor, Based upon the history as provided to you, your examination of Mr. Ward, the tests which you performed and your treatment, do you have an opinion based upon a reasonable degree of medical probability as to whether Mr.-- as whether to the conditions which you described were directly and proximately related to the motor vehicle collision of July 11, 1987?

"Ms. Trail: Objection.

"The Witness: Well, Certainly within all probability, in fact, with as much certainty as there is in this world, he was hit by a truck, and that caused these injuries.

"Mr. Regan: So --

"Mr. Oths: That was 1986. You said 1987.

"The Witness: In 1986, yes, is when the injury occurred.

Q. So, Doctor, your answer to that question is 'yes'?

"A. Yes.

"Q. And what is that opinion?

"A. Well, the opinion is that his injuries were caused by the -- the accident."

Appellees then assert that the following question and answer in the deposition of Dr. Schwarzell was relevant evidence on the issue of permanency:

"Q. Doctor, based upon a reasonable degree of medical probability, would a memory loss be consistent with the type of injury you have described?

"A. Yes, and it's more than a degree of probability. It's again something that was observed in this patient. He was confused when he came in and had a concussion syndrome, and we found evidence of severe head injuries on the cat scan.

"Indeed, sometimes the concussion syndrome or the effects of the injury completely go away and a patient is perfectly normal.

"But in this patient, my office records indicate that there were several signs of continuing problems with this patient's brain after his injury. We did notice some partial deafness, some decrease in -- in hearing -- ah -- and we also noticed after discharge and at the time of discharge, as well as in my office subsequently, that the patient continued to have loss of memory and -- and simply was abnormal in his mentation, in his ability to think and act and talk normally.

"And so for these reasons he had continued follow-up and I understand subsequent admissions also with Dr. Yashon in follow-up."

We disagree with appellees' assertion that the above testimony tends to prove that the injuries were permanent. The doctor never stated, nor was he asked, whether or not he believed the injuries were permanent. Instead, he testified that Oscar Ward still was suffering effects from the injuries a little more than a month following the accident. In fact, Dr. Schwarzell did not see Oscar Ward after August 13, 1986, 33 days following the accident.

However, we do conclude that sufficient evidence was presented to support the jury's finding that Oscar Ward's injuries were permanent. Another expert for appellees, Dr. David Yashon, testified that appellants injuries were caused by the accident and when asked, "And, Doctor, using the same barometer, do you have an opinion based upon a reasonable degree of medical probability as to whether the condition that exists in Mr. Ward is permanent?", Dr. Yashon answered, "that Mr. Ward's current complaints are probably permanent."

Appellant contends that Dr. Yashon did not testify as to which conditions or complaints he was referring when he stated they were permanent. Despite appellant's assertion, we find that Dr. Yashon did specify the injuries to which he was referring. Immediately after the above answer was given, the following colloquy occurred:

"Q. And what are his current complaints, Doctor?

"A. Well, I saw him today. He was complaining of left chest pain probably due to the chest tube and the chest injury, and low-back pain with radiation to the legs probably due to the impact of the injury.

"Q. Does he show any residuals of his head injury, Doctor?

"A. Well, yes, in the sense that he doesn't seem to be thinking quite fast or well enough. I'd say he's got slight dementia, but I didn't do -- I don't do psychological testing. Perhaps this could be done. But it appears to me that he probably has some dementia as a result of the injury."

Further, the third medical expert who testified on behalf of Oscar Ward, Dr. Robert Williams stated he believed the conditions were permanent. Accordingly, we hold that there was competent credible evidence presented from which the jury could properly find that Oscar Ward's injuries were permanent. Thus, that portion of the judgment below is affirmed.

We will next address the issue of future pain and suffering by both appellees. As with permanency, future pain and suffering must be proven by expert testimony to a degree of reasonable certainty. With respect to Oscar Ward, there were three medical experts who testified that he had experienced pain and suffering as a result of the accident. Further, as noted, *supra,* two of the doctors believed his injuries to be permanent. However, not one of the three doctors was asked whether they believed that the pain and suffering would continue into the future. Because there

was no expert medical testimony from which a jury could find that Oscar Ward will continue to experience pain and suffering in the future, that portion of the judgment was against the manifest weight of the evidence and is therefore reversed.

Mary Ward's future pain and suffering claim was based upon a fracture of a vertebrae in her neck. The symptoms which consisted of pain in her neck and right arm along with weakness in that arm did not appear until January or February of 1989. The fracture did not appear on x-rays taken immediately after the accident but was discovered in the results of a C.T. Scan made in 1989 after Mary Ward began experiencing the pain. While it should be noted that a C.T. scan will sometimes show fractures which do not appear on x-rays, there is some question as to whether appellees presented sufficient evidence on the issue of causation of the fracture in light of the fact that the symptoms did not manifest themselves until approximately a year and a half after the accident. However, we conclude sufficient competent, credible evidence was presented on that issue so that a jury could determine the accident was the cause. Dr. James A. Sides, one of appellees' experts testified that he believed that the fracture of the vertebrae was a result of the accident, although he was unaware of the negative result of the x-rays.

Although appellees' met their initial causation burden, the still were required to prove that pain and suffering would continue in the future. Appellant argues that no such evidence was presented. We disagree. As noted, *supra*, Mary Ward's symptoms consisted of pain in her neck and arm along with weakness in the arm. As the following two questions and answers indicate, Dr. Sides believed those symptoms would continue into the future:

"Q. And, Doctor, do you have an opinion based upon a -- a reasonable degree of medical probability as to whether all of her symptoms will completely clear up in the future?

"The witness:That's almost impossible to say. But at the present time I would say she will probably have some difficulty with this continuing on.

"Q. For the rest of her life?

"A. I would think for the rest of her life, as she already has degenerative changes on her x-rays."

Manifestly, because Dr. Sides testified that he believed that Mary Ward's symptoms which included pain would continue into the future, there was evidence presented from which the jury could experience future pain and suffering. Accordingly, that portion of the judgment is affirmed.

We will next consider the future medical expenses of Oscar Ward. Only one of the doctors, Dr. Yashon, who testified on behalf of Oscar Ward was asked whether there would be any future medical expenses. The first few questions concerning future medical expenses did not ask for an answer to a degree of reasonable certainty or reasonable probability and the corresponding answers would be insufficient to support an award by the jury. However, the following exchange between appellees' attorney and Dr. Yashon does met the standard set forth in *Powell, supra,* and, therefore, supports the jury award granting Oscar Ward damages for future medical expenses:

"By Mr. Oths:

"Q. And, Doctor, do you have an opinions to whether he will require -- an opinion based upon the same reasonable degree of medical probability -- as to whether he will require medical attention for these conditions for the remainder of his life?

"The witness: Yes, I do.

"By Mr. Oths:

"Q. And what is that opinion, sir?

"The witness: That he will require medical treatment probably for the rest of his life in some way or other as a result of the accident July 11, 1986."

Appellant also questions the jury award granting Oscar Ward damages for future loss of earnings. Again, only one doctor, Dr. Williams, gave an opinions to whether Oscar Ward would be able to return to work. The only evidence on this issue other than that presented by Dr. Williams was a letter written by Dr. Yashon to Dr. Williams on August 25, 1986 wherein he stated that he hoped Oscar Ward could return to work in four to six weeks.

Dr. Williams testified that Oscar Ward was permanently injured and prepared a letter for purposes of this litigation which reads as follows:

"Mr. Ward sustained multiple trauma, fracture left 3rd, 4th, 5th ribs, cerebral concussion, left lung contusion, deep abrasion left arm, contusion left chest and neck in automobile accident on 7-11-86. He suffers hypertension and anxiety tension state. He complains of pain in thoracic spine, chest pain, extreme nervousness, pain left shoulder blade, poor memory, headaches. He has chronic bronchitis and emphysema. He has persistent cough and dyspnea. There is

weakness in grip strength of left hand. He is unable to [sic] any lifting, prolonged walking.

"I feel the patient is permanent and totally disabled for gainful employment."

Appellant first asserts that Dr. Williams testimony and letter were not admissible because Dr. Williams did not have independent recollection of Oscar Ward. Appellant bases his argument on the fact that Dr. Williams first believed that Oscar Ward worked at the Veteran's Administration Hospital when in fact he worked for Austin Powder. We conclude that appellant's argument is meritless. It seems unlikely that a small town doctor would not have independent recollection of a patient who he had treated since 1969 and had seen almost every month since the accident. Dr. Williams later testified that it was Oscar Ward's brother who worked at the V.A. Hospital. At best, how well Dr. Williams knew Oscar Ward was a question for the jury to decide on determining the credibility of Dr. Williams testimony.

Appellant also asserts that the letter contained conditions resulting from the accident as well as pre-existing conditions, to wit: hypertension, bronchitis, and emphysema. With respect to the hypertension, Dr. Williams stated that before the accident, Oscar Ward's blood pressure was only slightly elevated; however, since the accident it was much higher. Further, Oscar Ward had been suffering from those problems for several years and had been able to work; thus, the jury could reasonably find, if it credited Dr. Williams' opinion, that Oscar Ward was totally and permanently disabled, that his disability was because of conditions which resulted from the accident. Because there was competent, credible evidence from which the jury could conclude that Oscar Ward would suffer a loss of future earnings, that portion of the judgment is affirmed.

The final future damage appellant asserts was improperly awarded was that for loss of consortium of both parties. "[A] married person is generally entitled to the society, co-operation, companionship, love, affection, aid, sexual relations and comfort of his or her spouse as special rights growing out of the marriage relationship. ... Loss of consortium is the loss of any of these rights." 2 Matthew Bender, Damages in Tort Actions (1989) 11-25, Section 11.15[1]. Appellant asserts that as with the other damages, appellees were required to present expert medical testimony on the issue. We disagree. We have found nothing which would indicate that expert testimony is necessary for a loss of consortium claim.

In regard as to what evidence is sufficient to support a claim of loss of consortium, the following is set forth in 2 Matthew Bender, Damages in Tort Actions, *Id* at 11-26 through 11-27:

"While the competent testimony of the injured spouse or a third party may be sufficient to support a consortium claim, the claimant's direct testimony would undoubtedly be more definitive and more persuasive."

While the above passage does not explicitly state that expert medical testimony is not necessary, because it determines that the testimony of the injured party and his spouse is sufficient to support such a claim, it implicitly concludes that expert witnesses are not necessary. In the case at bar, both appellees testified that their relationship had been affected by the accident and the jury awarded each damages for past loss of consortium. Since appellees' conditions which resulted in the loss of consortium will continue into the future--i.e., the jury found Oscar Ward's injuries to be permanent and further found that Mary Ward would experience future pain and suffering--it was reasonable for the jury to conclude that the loss of Consortium would also continue. Accordingly, that portion of the judgment is affirmed. For the aforementioned reasons, appellant's second, third, and fourth assignment of errors are sustained in part and overruled in part.

Because appellants fifth and sixth assignments of error are interrelated, we will address them together. In essence, appellant asserts that it sought to cross-examine Dr. Williams concerning certain judgments against him. One involved a misdemeanor conviction in 1971 for "conveying, attempting to convey into the Jackson County, Ohio, jail, narcotic medicine or drugs" in violation of R.C. 2917.17. The second occurred in 1972 and involved an indictment for five counts of perjury for knowingly giving false testimony under oath before the Franklin County Court of Common Pleas. The perjury counts were dismissed in exchange for Dr. Williams pleading guilty to five counts of contempt. Dr. Williams refused to answer certain questions concerning the two judgments and the court below eventually struck the entire portion of the cross-examination of Dr. Williams which concerned the two judgments. Appellant argues that the court erred in so ruling.

In making its determination, the lower court made the following oral pronouncement of its reasons for disallowing that portion of the deposition involving the judgments:

*"THE COURT:* Okay, well I'll tell you I'm going to exercise my judgment on that one right now, and exclude it. Okay, let's get to the next point, which had to do with, and I'll state my reasons on the record for excluding it. (A) I think it's too long ago, (B) I don't think Contempt is a crime under the statute, and (C) I think under Rule 608, basically you don't have any admissions of the good doctor himself that you can use, which means you are going to have to drag something in outside the record to do it."

Appellant asserts that evidence of the prior convictions should have been admissible pursuant to Evid. R. 608(B) or 609. Evid. R. 608(B) reads as follows:

"Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, *in the discretion of the court,* if clearly probative of truthfulness or untruthfulness, be inquired into the cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." (Emphasis added.)

Since it is within the discretion of the court to admit or exclude such evidence, we must determine whether the lower court's decision to exclude the evidence was arbitrary, unreasonable, or unconscionable. *See Sandusky Properties v. Aveni, supra.* Generally evidence is admissible if it is relevant. Evid. R. 402. Appellant asserts that the evidence in question is clearly relevant because it calls into question Dr. William's veracity and factor into his credibility.

However, even if evidence is relevant, it must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice... " Evid. R. 403(A). In the case at bar, the convictions in question occurred 16 years before the trial. There clearly was the potential for the jury giving too much credit on the convictions. Accordingly, we hold that the court did not abuse its discretion by not admitting the evidence pursuant to Evid. R. 608(B).

Appellant also argues that the evidence was admissible pursuant to Evid. R. 609 which reads, in pertinent part, as follows:

"(A) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if

elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement, regardless of the punishment whether based upon state or federal statute or ordinance.

"(B) Time Limit. *Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction* or of the release of the witness from the confinement, or the termination of probation, or shock probation, or parole, or shock parole imposed for that conviction, whichever is the later date, *unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.* However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

Since the conviction was more than ten years old, it was only admissible if the probative value of the convictions outweigh its prejudicial effect. As noted, *supra,* it is likely that the unfair prejudice outweighs the probative value. Thus, the court did not err in not admitting the evidence pursuant to Evid. R. 609.

Finally, appellant argues that two of the reasons the court gave for excluding the evidence were not valid reasons. Along with stating that the convictions occurred too long ago, the court also stated that the second conviction, i.e., the conviction for contempt, was not admissible because contempt was not a crime and also, because appellant had no admissions of Dr. Williams to use, so extrinsic evidence would be necessary. Because we hold that the first reason was sufficient to exclude the evidence, we need not determine whether the other two reasons had any merit. Accordingly, appellant's fifth and sixth assignments of error are overruled.

We will next jointly discuss and consider appellants seventh, eighth and ninth assignments of error. Essentially, appellant argues in these three assignments of error that the court erred in refusing to force appellees to submit to medical examinations by a doctor of appellant's choice.

In an entry dated February 3, 1988, the court, *inter alia,* ordered that discovery be com-

pleted by August 5, 1988, giving the parties six months to conduct discovery. On July 26, 1988, appellant's counsel sent a letter to appellees' counsel and enclosed medical authorizations for appellant requesting to obtain copies of appellees' medical records as well as verification of lost wages and copies of tax returns. Appellees did not comply with the request before August 5, 1988. At the pretrial conference on August 26, 1988, appellant sought to require appellees to submit to examinations by a doctor of appellant's choosing. Appellant claimed that such examinations would have been meaningless without copies of the medical records, which still had not been furnished. Apparently, the court stated that it would not extend discovery and, therefore, would not order the examinations. In an affidavit attached to a motion for a continuance, appellants asserted that appellees' counsel then agreed to the examinations, but when said examinations were scheduled refused to have appellees appear. Appellant then, on September 1, 1988, moved for the continuance of the trial date, which was set for September 19, 1988, and also moved for an extension of discovery. In an entry journalized September 3, 1988, the court denied both motions.

Appellant argues that there was no reason for appellees to refuse to submit to the examinations. We do not believe that is the relevant issue. We find that appellees had no duty to submit to the examinations. Appellant argued before the trial court that such examinations would have been meaningless without the medical records. However, in the letter sent to appellees' counsel on August 26, 1988, appellant made no mention of physical examinations. The first time physical examinations were discussed was at the pretrial on August 26, 1988, three weeks after the discovery cut off date. Appellant asserts that appellees agreed to the examinations. Assuming they did, we do not see how appellant was prejudiced by their later failure to submit to the examinations. At the time appellees agreed to the examination, the court had already refused to extend the discovery cutoff; therefore, regardless of appellees' actions, appellant would not have been entitled to the examinations.

The court has discretionary powers in controlling the discovery process. *Stegawski v. Cleveland Anesthesia Group* (1987), 37 Ohio App. 3d 78; *State. ex rel. Daggert. v. Gessman* (1973), 34 Ohio St. 2d 55. We do not believe the court abused its discretion in the case at bar.

As noted previously, appellant had six months to conduct discovery but waited until 10 days before the end of the period to request releases for medical records and did not make a request for physical examinations until the discovery period was over.[1] Even if appellee consented to but then refused to submit to the examinations, appellant has not been prejudiced. Certainly in a case like the one at bar, the defendant would know the plaintiffs' physical condition is in question. Therefore, appellant should have requested physical examinations before the discovery period had ended. Accordingly, appellant's seventh, eighth, and ninth assignment of error are overruled.

We will now address appellees' cross-assignments of error.[2] In their first cross-assignment of error they assert that the court bred in failing to grant their motion for prejudgment interest. Appellees allege that appellant did not make a good faith effort in attempting to settle the case and appellees were, therefore, entitled to interest.

Prejudgment interest on a judgment based upon tortious conduct is controlled by R.C. 1343(C) which reads as follows:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, *the court determines at a hearing* held subsequent to the verdict or decision in the action *that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.* (Emphasis added)

Accordingly, not only were appellees required to prove that appellant failed to make a good faith effort, they were also required to prove that they, as plaintiffs, did make a good faith effort. *Mills v. City of Dayton* (1985), 21 Ohio App. 3d 208. In offering proof for interest, one need not prove that the party acted in bad faith but only that the party did not act in good faith. *Kalain v. Smith* (1986), 25 Ohio St. 3d 157. The *Kalain* court went on to provide guidance as to what constitutes a good faith effort. Set forth in the syllabus of *Kalain, supra,* is the following:

"A party has not failed to make a good faith effort to settle under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential

liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."

In the case at bar, appellant did fully cooperate in discovery and did not attempt to unnecessarily delay the trial. The question is whether appellant rationally evaluated its risks and potential liability and whether appellant made a good faith monetary settlement offer or responded in good faith to an offer from appellees.

We believe that the lower court properly found that appellant did satisfy the former requirement while, as the lower court noted, "[i]t is clear from the evidence that [appellant] recognized liability was certain immediately after the accident occurred," there were certainly questions concerning the amount of damages, particularly medical expenses and future damages. Appellant attempted on numerous occasions to obtain proof of all of the medical expenses of appellees. However, appellees did not fully respond until shortly before trial. Hence, appellant never was in a position to know exactly its potential liability.

We further believe that the court properly found that appellant did fairly respond to appellees' sole settlement offer. Appellees requested $65,000 solely for the claims of Mary Ward. Appellant responded with a counter-offer of $4,500.[3] Considering the fact that appellant did not have all of the medical records it needed to fully analyze the liability particularly about future damages, a $4,500 counter offer was not unreasonable in light of the fact that the jury awarded Mary Ward $4,342.22 in past medicals.

We also note that appellees were required to act in good faith as well. This required them to fully comply with discovery requests as well as making settlement offers. As noted, *supra,* appellees were very late in providing appellant with the information it requested.

Further, with respect to making settlement offers, we note that "R.C. 1343.03(C) [requires] the party seeking prejudgment interest to demonstrate its aggressive prejudgment settlement efforts ..." *Cox v. Fisher Fazio Foods* (1984), 13 Ohio App. 3d 336 (Markus, J., Concurring). Appellees made only one settlement offer--i.e., $65,000 for Mary Ward's claim. They never offered to settle Oscar Ward's claims or the claims of both appellees together. We cannot find

that the lower court erred in stating that "there is at least some fault on the part of each of the parties," and, thus, in denying prejudgment interest. Appellees first cross assignment of error is overruled.

In their second cross assignment of error, appellees assert that the court below erred in denying their access to portions of the liability insurer's file in discovery proceedings surrounding the motion for prejudgment interest. Appellees essentially argue that the court erred in finding that certain documents were protected by the attorney client privilege because there cannot be an attorney client privilege between the insurance company and the attorney because the insurance company is not a party to the action.

With respect to discovery pending a prejudgment interest hearing, the Supreme Court in *Peyco v. Frederick* (1986), 25 Ohio St. 3d 164, stated the following in the syllabus:

"1. When a plaintiff, having obtained a judgment against a defendant, files a motion for prejudgment interest on the amount of that judgment pursuant to R.C. 1343.03(C), the plaintiff, upon a showing of 'good cause' pursuant to Civ. R. 26(B) (3), may have access through discovery to those portions of the defendant's insurer's 'claims file' that are not shown by the defense to be privileged attorney-client communications.

"2. If the defense asserts the attorney-client privilege with regard to the contents of the 'claims file,' the trial court shall determine by *in camera* inspection which portions of the file, if any, are so privileged. The plaintiff then shall be granted access to the non-privileged portions of the file."

In the case at bar, the court did make such an *in camera* inspection of the file and sorted the materials into three categories, to wit: (1) documents which were neither work product nor privileged, (2) documents which were work product but not privileged and which appellees showed good cause for production, and (3) documents which were privileged. The court then allowed appellees access to the first two categories. Thus, this court fully complied with the procedures set forth in *Peyco, supra.* The only possible error then is if the court below erred in determining that there exists an attorney client privilege between an attorney and appellant's insurer. We hold that there was no error.

In the case of *In re Klemann* (1936) 132 Ohio St. 187, the Supreme Court held that where an insurer receives a report from its insured and then transmits the same to counsel to prepare a

defense, such report is privileged against production. The court reached the same result in *The Travelers Indemnity Co. v. Cochrane* (1951), 155 Ohio St. 305. If the reports prepared and sent to an attorney are privileged, then communications directly between the insurer and an attorney are also privileged. In essence, the insurer, acting as appellant's agent is defending the suit for appellant. For the aforementioned reasons, we hold that appellees' second cross-assignment of error is overruled.

The judgment of the court is affirmed except for the portion of the judgment awarding Oscar Ward damages for future pain and suffering which is reversed for lack of evidence.

*Judgment affirmed in part,*
*and reversed in part.*

ABELE, P.J., concurs in judgment and opinion.

HARSHA, J., concurs with opinion.

---

[1] We note that appellant had sought the medical records several times but did not before July 26, 1988, seek releases so appellant could itself obtain the records. In any event, no request for physical examinations was made until after the discovery cut off date.

[2] We note that the trial court never issued findings of fact and conclusions of law on the entry denying prejudgment interest as requested by appellees pursuant to Civ. R. 52. Ordinarily, when such a request is made, there is no final appealable order until the court files the findings and conclusions. *See Walker v. Doup* (1988), 36 Ohio St. 3d 229. However, Civ. R. 52 states, in pertinent part, "Findings of fact and conclusions of law required by this rule . . *are unnecessary upon all other motions* including those pursuant to Rule 12, Rule 55 and Rule 56." (Emphasis added.) Since the entry in question concerned a motion for prejudgment interest, findings and conclusions were not necessary in the case at bar. Accordingly, we have jurisdiction over the cross-appeal.

[3] Appellees deny that a counter-offer was ever made; however, the record contains an affidavit of the claims adjuster stating that such a counter offer was made. Therefore, there was evidence supporting the lower court's determination that the counter-offer was made.

HARSHA, J., concurring.

I concur in judgment and opinion and write separately to address what I perceive to be a common problem in deposition practice as illustrated by appellant's first assignment of error. Video depositions of plaintiff's medical experts were conducted for admission at trial as provided by Civ. R. 32(A) (3). Upon direct examination, plaintiff's counsel asked the various experts for their respective opinions concerning future damages. The questions were phrased in terms of a "reasonable degree of medical *probability*" as opposed to *"certainty."* In almost every instance deposition, a general objection was raised by defense counsel prior to the experts' answer. In some instances, a more specific objection was based upon "the form of the question." In my opinion, a general objection is not sufficient to prevent waiver of foundational errors. See Evid. R. 103(A)(1), Civ. R. 32(B) and (D) and *Fox v. Ind. Comm.* (1955), 162 Ohio St. 569, 579.

The purposes of the contemporaneous objection rule include allowing the questioner to correct his or her mistake or inadvertence, as well as allowing the trial court to avoid error by taking corrective action. Evid. R. 103 requires specific objections. Civ. R. 32(D) provides that errors in the form of questions or other errors which could be cured if properly presented are waived unless a "reasonable" objection is made. In my opinion, to be "reasonable," an objection must be more specific than a general objection.

The reasons for the specificity requirement are made obvious by the situation at hand. It is implicit in my analysis that I do not believe the specific ground of the objection was apparent from the context. Having made a general objection in deposition, at trial, the appellant presents the court with a specific ground concerning the form of the question, i.e. "certainty" as opposed to, "probability" It is now too late for the questioner to take corrective action to rephrase the question. This is akin to trial by ambush which the Civil Rules and Rule of Evidence attempt to avoid. It is my opinion that questions and answers which are objected to in only general terms are properly placed before the jury by virtue of waiver in accordance with Evid. R. 103 and Civ. R. 32(D). This is especially true in a deposition setting.

However, those questions which were objected to as "to form" or "form of the question," are specific enough to alert opposing counsel that there may be something wrong with the way the question was asked. If counsel feels confident in his question, he or she may proceed. If not, counsel may inquire as to a more particular ground or reason for the objection. In this manner, the purpose of the rules would be served.

I also note that while I agree with the majority opinion that phrases "reasonable degree of

probability" and "reasonable degree of certainty," are functional equivalents in this context, many of the answers to "objectionable" questions were stated in terms which satisfied the proper foundational requirements. Accordingly, it would not be error to admit those answers. See *Fox, supra,* for the proposition that a proper answer can cure foundational defects.